Boris N. Sokoloff, Plaintiff, *v.* The National City Bank of New York, Defendant.

Supreme Court, New York Special Term, September, 1922.

Banks and banking — purchase of foreign credits — when bank must return money paid to purchaser — failure to deliver foreign currency in Russia — that Bolsheviki had closed the bank's Russian branch and seized its property not a legal excuse in action to compel refund.

A complaint alleged that in 1917 plaintiff at the city of New York paid to and deposited with the defendant bank a certain sum of money upon defendant's agreement to open an account for and in the name of plaintiff at defendant's Petrograd branch and to repay him such sum at the city of Petrograd in Russian rubles at the rate of twenty-three and one-half cents per ruble, in such amount and at such time as he might by written order demand. The answer besides a number of denials pleaded both as a complete defense and for a partial defense that by the use of force the Bolsheviki party compelled defendant to close its Russian branch and seized its property in Russia. *Held*, that these facts were not sufficient to permit the defendant to hold the moneys paid to it by plaintiff and at the same time to excuse defendant's failure to deliver the rubles as agreed, upon demand, and a motion to strike out said defenses will be granted.

It was implied in the agreement between the parties that defendant would maintain its branch in Petrograd where such demand could be made, and when it failed to do so the payment of the rubles became due upon plaintiff's abortive attempt to make demand therefor.

Impossibility of performance created by the revolutionary party, the sovereign authority of which is not recognized, was merely impossibility created by force and not by law, and constituted no excuse for defendant's failure to carry out its contract or to permit it to retain the consideration for a performance not pending.

A contention that by analogy the rule of section 89 of the Personal Property Law, that " where there is a contract to sell specific goods and subsequently, but before the risk passes to the buyer, without any fault on the part of the seller or the buyer, the goods wholly perish, the contract is thereby avoided," held untenable on the ground that the analogy was obviously incomplete, but if it were complete the contract would thereby be " avoided " and plaintiff could recover not damages but the consideration paid, and the complaint, framed on both theories, is sufficient.

MOTION to strike out certain defenses.

*Morris Hillquit,* for plaintiff.

*Sherman & Sterling (Carl A. Mead,* of counsel), for defendant.

LEHMAN, J.   The complaint herein alleges that on or about the 27th day of June, 1917, at the city of New York, " the plaintiff paid to and deposited with the defendant the sum of $30,225, and the defendant agreed to open an account for and in the name of·the said plaintiff at the defendant's said Petrograd branch and to repay him the said sum at the said City of Petrograd in Russian rubles at the rate of 23½ cents per ruble, *i. e.,* a total of One Hundred Thirty Thousand rubles in such amount and at such times as he may by his written order demand."   The defendant did open such account for the plaintiff at the said Petrograd branch and the plaintiff from time to time drew upon such account.   On February 1, 1918, the plaintiff had to his credit with the defendant in this account the sum of 122,000 rubles and he drew his check for that amount upon the said Petrograd branch of the defendant and delivered the check to the payee " as his agent and for the purpose of drawing the said money for the plaintiff."   The payee attempted to present the check to the said Petrograd branch of the defendant bank but was unable to do so " for the reason that the said branch had been discontinued and closed by the defendant before said date and the defendant had ceased doing business in the said City of Petrograd or in any other part of Russia without leaving any representative upon whom presentment could be made."

The answer contains a number of denials and separate defenses and the plaintiff has moved for an order striking out the first and second defenses on the ground that they are insufficient in law. In these defenses the defendant has pleaded first as a complete defense and then as a partial defense many allegations which can be briefly summed up as follows:   In November, 1917, " revolution occurred in Russia which was conducted by a party known as the Bolsheviki who have now succeeded in gaining ascendancy over a large part of the former Russian Empire.   The socalled Bolsheviki have occupied and controlled the City of Petrograd uninterruptedly since November, 1917."   This " party " has seized possession of all banks and decreed that all existing banks should be merged into the state bank and thereafter " as a result of the said decree the property in Russia of the defendant's Petrograd branch consisting of currency, money on deposit in other banks and Russian state obligations, including the deposit referred to in the complaint herein if any was deposited by the said branch or became deposited às a result of said decree with the said State Bank of Russia.   On

December 27, 1917 the ' socalled Bolshevik government ' seized possession of the defendant's Petrograd Branch by force of arms " and the " decrees and regulations of the said Government were thereafter carried into effect by superior force, which it was a physical impossibility for the defendant or its representatives to resist." The defense also alleges that the Russian currency now possesses only a speculative value in other countries including the United States. The defense also contains certain conclusions of law to which no consideration need be given.

The contract between the parties as alleged in the complaint was not as the defendant claims a contract for the purchase of foreign exchange which was consummated by the opening of the account in Petrograd according to plaintiff's instructions, for the defendant agreed not merely to open the acccunt but to pay to the plaintiff the amount of this account through its Russian branch; nor were there two separate contracts, one made here for the opening of the account and a second constructively made in Russia with the Russian branch. It was one contract made in New York with the defendant though it was to be carried out in part in Russia. On the other hand, it was not simply as the plaintiff claims a contract of deposit creating the ordinary relations of debtor and creditor for the amount deposited, for whatever debt was created was not to be paid in American currency, which is the only money in the strict sense of that word which we recognize, but was to be liquidated by the payment on demand in Petrograd of a stipulated number of rubles which in our law are analogous rather to chattels than to money for their value is measured by our currency and fluctuates in relation to our money. Implied in this contract there was of course a term that the defendant would maintain its branch in Petrograd where such demand could be made and when it failed to maintain such a branch the payment of the rubles became due upon the plaintiff's abortive attempt to make such demand. The answer sets up that it was impossible because of conditions in Petrograd to maintain a branch or to pay out rubles to the depositor of such a branch, but impossibility of performance cannot avail the defendant unless such impossibility was created by act of the sovereign, that is, by law.

The contract was made in this country and there is strong authority for the view that ordinarily a failure to carry out a contract made in this country is excused only by impossibility created by the law of this country and not by a foreign sovereign. It is unnecessary, however, to decide upon this motion whether this rule applies in its full strictness to a contract involving a deposit of money in a foreign country particularly where that country is at war

when the contract was made and the parties might well have understood that it was made subject to governmental necessities and restrictions due to the war. In the answer under consideration there is no claim that the alleged impossibility was created by any real government but only a " so-called government," that is, by the Bolsheviki party. Impossibility created by a revolutionary party whose sovereign authority is not recognized is merely impossibility created by force and not by law. Riots or violence may even here make it impossible for a contractor to carry out his contract, yet they have never been held to constitute an excuse for his failure to carry out his contract or to permit him to retain the consideration for a performance which is not tendered.

Moreover it must be remembered that the defendant does not allege that the " so-called government " of the Bolsheviki compelled the defendant to liquidate its obligations to the plaintiff by payment to it or to the state bank or that it confiscated this obligation, which might give at least some ground for argument that if the Bolsheviki constituted a sovereign government, a payment to them would be recognized even by the courts of this country as a discharge of the obligation under certain circumstances (See argument of counsel and opinions in *Ware* v. *Hylton*, 3 Dall. 199), but it merely alleges that it compelled the deposit with the State Bank of Russia of the " property " of the defendant's Petrograd branch " including the deposit referred to in the complaint." The " deposit referred to in the complaint " constituted, however, not property but an obligation and there was no property of the defendant earmarked for its liquidation.

Upon analysis the defense really is reduced to the allegation that by the use of force a revolutionary party compelled the defendant to close up its Russian branch and seized its property in Russia and these facts are clearly not sufficient to permit the defendant to hold the moneys paid to the defendant and at the same time to excuse its failure to carry out its agreement to deliver to the plaintiff the rubles it agreed to deliver on demand. It does not even appear that the defendant kept in Russia any more rubles or securities because of its agreement with the plaintiff than it would otherwise have kept there or that its failure to pay the plaintiff would not result in its unjust enrichment. It held no property of the plaintiff as a bailment or pledge and the seizure of its own property constitutes no defense to this action.

The defendant claims that by analogy the rule of section 89, subdivision 1, of the Personal Property Law applies to this case that " Where there is a contract to sell specific goods, and subsequently, but before the risk passes to the buyer, without any fault

on the part of the seller or the buyer, the goods wholly perish, the contract is thereby avoided." The analogy is obviously very incomplete but if it were complete then the contract would thereby be "avoided" and the plaintiff could recover not damages but the consideration paid and the complaint is sufficient, and is obviously framed, on both theories.

The defendant further claims that in any event the facts alleged in the defense affect the measure of damages. I am not passing on this motion whether the measure of damages is the amount paid, the value of the ruble in 1918 or at the time of the trial, but the allegations of the affirmative defense herein above considered seem to have no relevancy upon the measure of damages to be applied.

Motion granted, with ten dollars costs.

Ordered accordingly.